Opinion issued October 30, 2003







            













In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-02-00753-CR
____________
 
BERNARD B. DAVIS, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 177th District Court
Harris County, Texas
Trial Court Cause No. 886786
 

 
 
MEMORANDUM OPINION
          After the trial court denied his motion to suppress evidence, appellant, Bernard
B. Davis, without an agreed punishment recommendation from the State, pleaded
guilty to the offense of possession of a controlled substance, namely cocaine, with
intent to deliver, weighing more than four grams but less than 200 grams.


 The trial
court sentenced appellant to confinement for 10 years.


 Appellant’s appointed
appellate counsel filed an Anders


 brief, and the State has waived its right to file a
brief. Appellant proceeds pro se.
          In four points of error, appellant contends that the evidence was legally and
factually insufficient to support his conviction, the trial court erred in denying his
motion to suppress evidence, his trial counsel was ineffective, and the State failed to
disclose exculpatory evidence. We affirm.
Factual and Procedural Background
          At the hearing on appellant’s motion to suppress evidence, Houston Police
Officer R. Benavides testified that, while on patrol on September 1, 2001, at
approximately 9:30 p.m., he went to the Houtex Motel. When he arrived at the motel,
Officer Benavides saw appellant and a motel security guard in the parking lot. When
Benavides got out of his patrol car to determine whether appellant was a person who
had run from Benavides earlier that day, the motel security guard ran away and
appellant “quickly jogged or darted, tried to get behind another vehicle so that I
couldn’t see him.” Benavides, who was approximately 10 to 15 feet away from
appellant, saw appellant toss a black film canister and a plastic bag underneath a
Chevrolet Suburban. Benavides was “scared” because appellant “kept reaching in his
pockets” as Benavides approached, so Benavides drew his gun and held appellant at
gunpoint until “backup” arrived. When additional officers arrived, they handcuffed
appellant and placed him inside a patrol car.
          Officer Benavides then retrieved the canister and plastic bag from underneath
the Suburban. The canister contained several “off-white” rocks, and the bag
contained a white powdery substance, both of which were determined to be cocaine. 
Another officer then placed appellant under arrest.
          On cross-examination, Benavides admitted that, at the time he saw appellant
make a “throwing motion,” he was unable to see exactly what articles appellant had
thrown under the Suburban. However, when he looked under the Suburban, the only
items Benavides saw were the canister and the plastic bag. Benavides also admitted
that the only reason he approached appellant that evening was to find out why
appellant had run from him earlier that day.
          Appellant testified that he was not the same man who ran from Officer
Benavides earlier in the day. On the evening in question, appellant was standing on
the sidewalk in front of the motel swimming pool with a security guard and an Asian
man when he heard someone scream “Hey!,” and the Asian man then ran away. 
Appellant “instinctively” ducked and did not realize it was a police officer who had
yelled until he saw the officer get out of a patrol car. Appellant testified that, when
he realized a police officer was yelling at him, appellant was already in the front of
the Suburban (approximately 2 feet from his original position). Appellant denied
throwing anything underneath the Suburban, and denied ownership of the cocaine. 
Appellant testified that Officer Benavides approached him, accused him of running
away from him earlier that day, and then threatened to shoot him. Appellant then told
Benavides “You have the wrong person.”
                                         Motion To Suppress Evidence
          In his first and second points of error, appellant argues that the trial court erred
in denying his motion to suppress evidence. Within these points of error, appellant
also challenges the legal and factual sufficiency of the evidence to support his
conviction. However, appellant entered a plea of “guilty.” His written judicial
confession, standing alone, is sufficient to sustain his conviction upon his plea of
guilty, and it also satisfies the requirements of article 1.15 of the Code of Criminal
Procedure. Tex. Code Crim. Proc. Ann. art. 1.15 (Vernon Supp. 2003)


; Dinnery
v. State, 592 S.W.2d 343, 353 (Tex. Crim. App. 1979); Stewart v. State, 12 S.W.3d
146, 147-48 (Tex. App.—Houston [1st Dist.] 2000, no pet.). Accordingly, we
overrule appellant’s arguments challenging the legal and factual sufficiency of the
evidence.
          We review a trial court’s denial of a motion to suppress evidence for abuse of
discretion. Guzman v. State, 955 S.W.2d 85, 86 (Tex. Crim. App. 1997). A trial
court abuses its discretion when it acts without reference to any guiding rules or
principles or acts arbitrarily or unreasonably. Galliford v. State, 101 S.W.3d 600, 604
(Tex. App.—Houston [1st Dist.] 2003, pet. ref’d). We will afford almost total
deference to a trial court’s determination of historical facts supported by the record,
especially when the findings are based on an evaluation of the credibility and
demeanor of the witnesses. Guzman, 955 S.W.2d at 89. In reviewing a ruling on a
question of application of law to facts, we review the evidence in the light most
favorable to the trial court’s ruling. Id. However, we review de novo a trial court’s
determination of reasonable suspicion or probable cause. Id. at 87.
          Appellant argues that Officer Benavides lacked probable cause to search him,
and that the search was illegal because the officer did not obtain a search warrant and
no exigent circumstances were present to justify a warrantless search. However, as
noted above, Officer Benavides did not obtain the narcotics at issue by searching
appellant or any of his belongings. Rather, Benavides detained appellant until
additional officers arrived, and he then found the narcotics on the ground in the
containers appellant had thrown under the Suburban.
          Abandonment of property occurs if (1) a defendant intended to abandon the
property, and (2) his decision to abandon the property was not due to police
misconduct. Swearingen v. State, 101 S.W.3d 89, 101 (Tex. Crim. App. 2003). 
When police officers take possession of property that has been abandoned
independent of police misconduct, no seizure occurs under the Fourth Amendment.


 
Id. Further, when a defendant voluntarily abandons property, he lacks standing to
contest the reasonableness of the search of the abandoned property. Id.
          There is no merit to appellant’s claim that Officer Benavides conducted an
improper warrantless search or that any evidence obtained from such search should
be suppressed. Benavides did not “search” appellant. Rather, he recovered the
narcotics from inside the containers that he found on the ground. Benavides testified
that appellant abandoned the containers before appellant was approached or detained
by the officer. Appellant testified that the containers were not his.
          Appellant also argues that he had an expectation of privacy because the motel
was his home. Courts have recognized a privacy right for individuals staying in a
motel room. Minnesota v. Olson, 495 U.S. 91, 98, 110 S. Ct. 1684, 1689 (1990). 
However, appellant had no valid expectation of privacy in the area outside his motel
room. Wilson v. State, 98 S.W.3d 265, 272 (Tex. App.—Houston [1st Dist.] 2002,
pet. ref’d).
          Appellant also asks this Court to review the credibility of the State’s witness. 
Appellant challenges the veracity of Officer Benavides’ testimony at the hearing and
claims that Benavides is an “imposter witness.” However, we afford great deference
to a trial court’s determination of historical facts that the record supports, especially
when the findings are based on an evaluation of the credibility and demeanor of the
witnesses. Icke v. State, 36 S.W.3d 913, 915 (Tex. App.—Houston [1st Dist.] 2001,
pet. ref’d). The trial court is the sole judge of a witness’s credibility and may accept
or reject any or all of the witness’s testimony. Id. Thus, we defer to the trial court’s
determination of credibility.
          We overrule appellant’s first and second points of error.
                                         Ineffective Assistance of Counsel
          In his third point of error, appellant argues that his trial counsel was ineffective
in failing to (1) thoroughly investigate the facts, (2) raise objections at the hearing,
(3) notify the court that the State had information regarding the whereabouts of a
material witness it had refused to disclose, (4) be proficient as to court procedures,
(5) investigate a viable defense, and (6) properly review an enhancement allegation.
          To prove ineffective assistance of counsel, an appellant must demonstrate that
counsel’s performance was so deficient that he was not functioning as acceptable
counsel under the Sixth Amendment,


 and that but for the counsel’s errors, the result
of the proceeding would have been different. Strickland v. Washington, 466 U.S.
668, 687, 104 S. Ct. 2052, 2064-65 (1984); McKinny v. State, 76 S.W.3d 463, 469
(Tex. App.—Houston [1st Dist.] 2002, no pet.). It is appellant’s burden to prove
ineffective assistance of counsel by a preponderance of the evidence, and appellant
must satisfy both prongs of the Strickland test or the claim will fail. Thompson v.
State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). We recognize a strong
presumption that counsel’s performance fell within the wide range of reasonable
professional assistance. Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. To defeat
this presumption of reasonable professional assistance, “any allegation of
ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness.” McFarland v. State, 845
S.W.2d 824, 850 (Tex. Crim. App. 1992).
          Appellant argues that his counsel was ineffective in failing to thoroughly
investigate the facts, raise objections, notify the court that the State was withholding
material evidence, and fulfill his obligations as counsel where the trial court had to
repeatedly explain court procedures. However, appellant has not directed us to any
part of the record that supports his contentions. Appellant does not explain what facts
his trial counsel failed to investigate or explain any potential objections his counsel
failed to make. Moreover, there is no indication in the record that the trial court had
to explain court procedures to appellant’s trial counsel.
          With regard to appellant’s claim that the State intentionally withheld material
evidence, the following exchange between the trial court and the prosecutor is
illustrative:
The Court:But as far as discovery, has it been satisfied?
 
[Defense counsel]:It’s been satisfied.
 
The Court:There has been an open file?
 
[Defense counsel]:Yes, ma’am.
 
The Court:And I will remind the State that if they are in
possession of any exculpatory evidence, that
they need to disclose that.
 
          [Prosecutor]:                    Absolutely, Judge.
          The Court:                       Are you aware of any?
[Prosecutor]:None that – at all, really, but certainly nothing
that hasn’t been disclosed.
We hold that the record does not support appellant’s claim that his trial counsel
should have notified the trial court that the State had withheld material evidence.
          Appellant argues that his counsel failed to investigate a viable defense by not
obtaining the testimony of the motel security guard who was present at the time of
appellant’s arrest. The trial court, appellant, and appellant’s counsel engaged in the
following exchange on this issue:
[Defense counsel]:Also, Judge, if you recall I’ve previously filed
a Motion for Continuance. There was a
security guard present when this offense was
committed who my client alleges was in a
position to testify that he did not throw down
or throw away anything out of his hands when
the officer approached. You granted me that
motion for continuance, I have spent out-of-
pocket between three and four hundred
dollars on a skip chaser trying to find this
gentleman. . . . I have no idea where to go,
even though I could file a Motion for
Continuance asking for more time; but I
would have to be candid with the court, I have
no leads at this moment to know where to
even go look for him.
 
The Court:It sounds as if you made a diligent effort to
find this witness?
 
          [Defense counsel]:           I have.
 
          The Court:                       To no avail?
 
          [Defense counsel]:           To no avail.
 
The Court:And we have delayed this trial in the past for
this purpose.
 
[Defense counsel]:Correct, Judge. But I would anticipate if he
was here, he would testify that Mr. Davis did
not throw anything out of his hands. 
However, I have not talked to him, I don’t
know that, but that supposedly what
[appellant] said he would say.

                                                   . . . .
 
[Appellant]:The first court-appointed attorney spoke to
the witness the security guard [sic]. Ms. 
Keyser, Ms. Debbie Keyser, she spoke to him
when I first got —
 
The Court:Ms. Keyser, I know, would have passed on
any information that she has to Mr. Stafford. 
Is that correct?
 
[Defense counsel]:That’s right, Judge; but the problem is, that’s
the witness we are trying to find. We don’t
know where he is. Like I said, I’ve spent
several hundred dollars not only out-of-pocket for a skip tracer, also the money for
doing an out-of-state subpoena, making long
distance calls to Florida, Kentucky, Georgia,
every address the skip tracer has provided us. 
We have tried to find this guy and I can’t find
him. So I don’t know what else to do. I agree
that he’s a material witness, but I can’t find
him.

The record indicates that trial counsel did attempt to locate the security guard, but
was simply unsuccessful.
          Appellant’s final assertion of ineffective assistance of counsel rests on the
claim that his attorney did not properly review an enhancement allegation. However,
the State dropped the enhancement charge. Therefore, there was no need to review
it.
          Based on the record presented, we hold that appellant has not shown his
counsel’s performance was deficient. Accordingly, we overrule appellant’s third
point of error.
Exculpatory Evidence
           In his fourth point of error, appellant argues that the State failed to reveal
evidence in its possession that was favorable to him. Appellant argues that “[t]he
record clearly shows that the prosecutor and the state appointed attorney to an extent
exhibited official misconduct. They withheld evidence, used half[-]truths, and a
wrong interpretation of the law to acquire the conviction of [appellant].”
          Appellant does not point to any portion of the record that supports this claim. 
We find no indication in the record that the State withheld, or was aware of, any
undisclosed exculpatory evidence.
          We overrule appellant’s fourth point of error.
Conclusion
          We affirm the judgment of the trial court. We also grant the motion to
withdraw filed by appellant’s court-appointed appellate counsel. Stephens v. State,
35 S.W.3d770, 771 (Tex. App.—Houston [1st Dist.] 2000, no pet.).
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Taft, Jennings, and Hanks.

Do not publish. Tex. R. App. P. 47.2(b).