995 S.W.2d 838 (1999)
In the Matter of J.M.
No. 03-98-00206-CV.
Court of Appeals of Texas, Austin.
June 10, 1999.
*839 Kameron D. Johnson, Anderson & Smith, P.C., Austin, for appellant.
Karyn D. Scott, Asst. Dist. Atty., Austin, for appellee.
Before Justices JONES, B.A. SMITH and YEAKEL.
*840 JONES, J.
The 98th District Court, sitting as the Juvenile Court of Travis County, found appellant guilty of engaging in delinquent conduct[1] by committing the offense of possession of marihuana.[2] Appellant appeals the adjudication of delinquency, asserting in two points of error that the court improperly denied his motion to suppress evidence. We will affirm the delinquency adjudication.

FACTUAL AND PROCEDURAL BACKGROUND
In the early morning hours of January 4, 1998, Officer Leslie Snow of the Austin Police Department encountered three males, including appellant, walking down an Austin street that was within a curfew area. From their appearance, Snow suspected the three were juveniles in violation of Austin's juvenile curfew ordinance.[3] She stopped the group, inquired as to their names and ages, and asked them to produce identification. All complied, and she confirmed her suspicions that they were indeed minors.
Snow testified[4] that, after confirming that the three boys were juveniles, she told them they were "in custody" for violating the curfew ordinance. She then conducted a search of each, including reaching into the boys' pants pockets. Finding nothing illegal on one of the juveniles and only cigarettes on the other, Snow issued field release citations to those two boys and released them to the custody of their parents. Snow's search of appellant's pockets revealed two baggies containing small amounts of marihuana; as a result, appellant was transported to Gardner-Betts Juvenile Justice Center. Snow explained that, pursuant to the general policy of the Austin Police Department, had she found nothing illegal on appellant, he too would have been given a field release citation and released to the custody of his parents.
Appellant's testimony concerning the events of that night largely comports with Snow's version. Appellant did add, however, that he explained to the officer why he was out past curfew. He testified that he told her that he and his two companions had been at a friend's house and had been given permission to spend the night; the friend's mother later changed her mind, however, and told the boys to leave. He was not given an opportunity to use the telephone before leaving, so he had no choice but to walk home, and was doing so when the officer stopped him.
Appellant was charged with delinquent conduct for possession of marihuana. Appellant filed a motion to suppress the marihuana evidence obtained by Officer Snow, arguing that he was not in custody when he was searched and therefore any evidence was seized in violation of his constitutional and statutory rights. The trial court denied the motion. Appellant then pleaded guilty pursuant to a negotiated plea arrangement. This appeal on the suppression determination followed.

DISCUSSION
In reviewing a suppression determination, reversal is proper only if the trial court abused its discretion and the decision is unsupported by the record. Rachal v. State, 917 S.W.2d 799, 809 (Tex. Crim.App.1996). The reviewing court must view the record and all reasonable inferences therefrom in the light most favorable to the trial court's ruling. Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim.App.1996). The trial court's ruling must be sustained if it is reasonably supported *841 by the record. Id. The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. Id.
Appellant challenges the trial court's denial of his motion to suppress in two related points of error. Appellant contends first that when Snow searched him, he was not "in custody," but rather was only the subject of an investigatory detention, which should have ended as soon as he offered the officer a valid defense to his curfew violation.[5] In his second point of error, appellant argues generally that because he was not under "custodial arrest" at the time he was searched, the search was constitutionally impermissible.[6] Because the outcome of both points of error turns on whether appellant was "in custody" at the time of the search, we will address them together.[7]
It is well established that searches of a person incident to a lawful arrest are excepted from the requirement of obtaining a warrant and thus do not violate either the Fourth Amendment of the United States Constitution or Article I, Section 9 of the Texas Constitution. See, e.g., Rogers v. State, 774 S.W.2d 247, 264 (Tex.Crim.App.1989). Appellant concedes that had he been placed under "full custodial arrest," any search conducted thereafter would have been legally permissible as a valid search incident to arrest;[8] however, he contends he was not under custodial arrest at the time of the search.
Section 52.028 of the Family Code
In support of his argument that he was not in custody at the time of the search, appellant points to Snow's testimony that, until she found the contraband in appellant's pocket, she had no intention of taking him to a juvenile processing facility, but intended merely to issue him a field citation and release him to the custody of his parents, as she ultimately did with the other two boys. Appellant argues that the officer's intent to "release" the boys shows they were not actually in custody at the time of the search and seizure. We disagree.
Section 52.028 of the Family Code mandates the procedures that must be followed, without unnecessary delay, once an officer has taken a juvenile into custody for violation of a juvenile curfew ordinance. See Tex. Fam.Code Ann. § 52.028 (West 1996). The statute provides the officer with three options: (1) release the child to his parent or guardian; (2) take the child before a court to answer the charge; or (3) take the child to a juvenile curfew processing office. See id.
Because these options arise after the child has been taken into custody, however, which of the three alternatives the officer intends to pursueor which alternative she ultimately chooses to pursue has no bearing on the preliminary determination of whether the child is in custody. Regardless of which option the officer exercises, she is merely following the procedures *842 required by the statute after the child has been placed in custody. Therefore, Snow's testimony that she initially intended to release all three boys to the custody of their parents is not inconsistent with placing them in custody for violation of the curfew ordinance.
Appellant directs this Court to the recent United States Supreme Court opinion in Knowles v. Iowa, 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998), as controlling on the issue of custody when an officer's intent is to issue a citation and release. In that case, an officer stopped Knowles for speeding and, under Iowa law, had the choice to either issue a citation or arrest. The officer chose to issue the citation, but nevertheless searched Knowles's car. When the officer found illegal contraband, Knowles was arrested. The court held that the officer's search incident to the issuance of a citation, without an arrest, violated the Fourth Amendment. See id. at 487.
We find Knowles to be distinguishable. In the present appeal, Officer Snow searched appellant incident to taking him into custody for a curfew violation, not incident to issuing a citation with no arrest. The fact that Snow initially intended to issue a citation and release appellant to his parents subsequent to taking him into custody does not place this case within the Knowles decision, where the officer chose only to issue a citation and release without making an arrest. Contrary to appellant's assertion, the "release" of a juvenile contemplated by section 52.028(a)(1) of the Family Code is not equivalent to the release with citation addressed in Knowles. The latter involves a full release from all further detention; the former continues restraint by dictating that the child be released to the custody of his parent as part of the statutory processing established for juvenile curfew offenders once they are in custody.[9]
Appellant asserts that upholding the trial court's decision in this case will encourage officers to make "sham" arrests of juveniles. Specifically, he expresses concern that an officer who has no intention of taking a juvenile into custody for a curfew violation will make a "sham" arrest solely for the purpose of conducting a search and then, if nothing is found, "unarrest" and release the child. Here, however, we are not presented with a situation where the officer has the option of either taking the juvenile into custody or releasing him with a citation. Rather, the officer must first make the decision to take the child into custody; once she has done so, she must comply with one of the three alternatives found in the section 52.028(a) statutory scheme for processing juveniles who are in custody for curfew violations, one of which is releasing the child to the custody of his parent.
In fact, if we were to adopt appellant's logic, we would effectively be holding that whenever an officer stops a child for violation of curfew with the intention of taking the child into custody, but also intends to follow the section 52.028(a)(1) statutory scheme and release the child to the custody of his parents, the officer necessarily must have engaged in a "sham" arrest solely for the purpose of conducting an illegal search. We decline to so hold.
Of course, our conclusion that the issue of custody is not affected by Officer Snow's initial intention to release appellant to the custody of his parents does not end our inquiry. The question whether appellant was under a custodial arrest when Snow conducted her search remains to be determined. Snow testified that she told the boys they were "in custody" once she determined their ages. We agree with appellant that simply saying the words "you are in custody" is not dispositive on *843 whether an actual custodial arrest has occurred.
"Seizure" of Person
The court of criminal appeals has adopted the standard found in California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), for determining when a person is "seized" for purposes of article I, section 9 of the Texas Constitution.[10]See Johnson v. State, 912 S.W.2d 227, 235 (Tex.Crim.App.1995). Prior to Hodari D., a "seizure" occurred when a reasonable person facing a show of authority first believed he was not free to leave. Under the Hodari D. test, a "seizure" requires not only that a reasonable person believe he was not free to leave, but also requires either: (1) the application by the officer of physical force with lawful authority, or (2) submission by the suspect to the assertion of authority. See Johnson, 912 S.W.2d at 235; State v. Shamsie, 940 S.W.2d 223, 225 (Tex.App.-Austin 1997, no pet.) For purposes of constitutional analysis, arrests are seizures. See Johnson, 912 S.W.2d at 235.
In Hodari D., two police officers on foot patrol encountered several youths, including Hodari, huddled around a parked car. Upon seeing the officers, the youths began to run. This aroused the officers' suspicions, and they gave chase. When Hodari was about to be overtaken by one of the officers, he tossed away what was later determined to be a small rock of cocaine. Hodari sought to suppress the evidence of cocaine as the fruit of an illegal seizure. The issue before the Court was whether Hodari had been "seized" within the meaning of the Fourth Amendment before he dropped the contraband. The Court found that he had not, because (1) the officer had not applied physical force to Hodari before he tossed away the contraband, and (2) having fled from the officer, Hodari had not submitted to the officer's show of authority.
As in Hodari D., the controlling issue in the present appeal is whether appellant was "seized"i.e., in custodyat the time the contraband was found. Both Officer Snow and appellant testified that when appellant and his companions were stopped, Snow asked them for their names and ages. All three boys complied; they did not attempt to flee or refuse to answer her questions. She then asked them to produce identification. Again, they readily complied by producing Texas I.D. cards. Snow then told them they were in custody for a curfew violation, and, once again, they did not attempt to flee or in any other way indicate they would not submit to this show of authority. Finally, they all submitted to her search. We are convinced that these actions constituted a sufficient showing of authority by Snow that a reasonable person would not have felt free to leave, and also demonstrated a submission to that authority by appellant and the other juveniles.
We conclude that appellant was in custody at the time Officer Snow conducted the search of appellant's pockets; accordingly, the search was a valid search incident to arrest and did not violate either the Fourth Amendment of the United States Constitution or article I, section 9 of the Texas Constitution. Because the contraband found on appellant's person was discovered pursuant to a lawful search incident to arrest, the trial court did not abuse its discretion in denying appellant's motion to suppress. Appellant's two points of error are overruled.

CONCLUSION
The trial court's adjudication of delinquency is affirmed.
NOTES
[1] See Tex.Fam.Code Ann. § 54.03 (West 1996 & Supp.1999).
[2] See Tex.Health & Safety Code Ann. § 481.121 (West 1992 & Supp.1999).
[3] See Austin, Tex., Rev. Ordinances ch. 10-7 (1992).
[4] All of the evidence in this case was presented at the hearing on appellant's motion to suppress evidence. After the trial court denied appellant's suppression motion, appellant pleaded guilty to the offense of possession of marihuana pursuant to a plea arrangement, which allowed him to appeal the suppression determination.
[5] It is a defense to prosecution for a curfew violation that the minor is on an errand made necessary by an emergency or is moving through a curfew area to his home in a curfew area by direct route. See Austin, Tex., Rev. Ordinances ch. 10-7 (1992).
[6] Appellant does not indicate to this Court what constitutional provisions he contends were violated. We presume appellant complains the seized contraband should not be admitted under the "fruit of the poisonous tree" doctrine because the search violated either the Fourth Amendment of the United States Constitution or Article I, Section 9 of the Texas Constitution or both.
[7] Although not entirely clear from appellant's brief, it appears that in his first point of error appellant may be arguing that because he offered Officer Snow a reason for his curfew violation, she was obligated to release him immediately. This argument is without merit. The fact that an arrestee may offer exculpatory evidence to an officer that may later support a defense to criminal activity does not eliminate probable cause to arrest.
[8] While the taking of a child into custody is not technically an "arrest," it is considered an arrest for the purpose of determining the validity of a search. See Tex. Fam.Code Ann. § 52.01(b) (West 1996). For that reason only, we use the terms interchangeably in this opinion.
[9] Although section 52.028 of the Family Code applies only to curfew violators, a person taking a juvenile into custody for any criminal violation has the option of subsequently releasing the child to his parent, guardian, or custodian pursuant to the general statutory scheme for processing a child who has been taken into custody. See Fam.Code § 52.02(a)(1) (West Supp.1999).
[10] The test for when a "seizure" has occurred is identical for purposes of constitutional analysis under Article I, Section 9 of the Texas Constitution and the Fourth Amendment to the United States Constitution. See Johnson v. State, 912 S.W.2d 227, 234 (Tex.Crim.App. 1995); State v. Shamsie, 940 S.W.2d 223, 225 (Tex.App.-Austin 1997, no pet.).