Opinion filed August 15, 2024



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00183-CR
_____

### RACHEAL MICHELLE SWANGER, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the County Court**
**Eastland County, Texas**
**Trial Court Cause No. 2200395**

## M E M O R A N D U M   O P I N I O N

Appellant, Racheal Michelle Swanger, was charged by information with the offense of failure to identify by intentionally providing a false or fictitious name to a peace officer, a Class B misdemeanor. TEX. PENAL CODE ANN. § 38.02(b), (c)(2) (West Supp. 2023). Appellant filed a motion to suppress all written or oral statements obtained by law enforcement in connection with her detention and arrest

for this offense, asserting that law enforcement (1) did not have reasonable suspicion for her initial detention and (2) as a result, they violated her rights under the Fourth Amendment to the United States Constitution and Article I, Section 9 of the Texas constitution. The trial court denied Appellant's motion. Appellant thereafter entered a plea of guilty to the charged offense, and the trial court assessed Appellant's punishment at confinement for one hundred and eighty days in the Eastland County jail and a $2,000 fine; however, the trial court suspended Appellant's sentence and placed her on community supervision for one year.

In Appellant's sole issue on appeal, she contends that the trial court abused its discretion when it denied her motion to suppress because law enforcement lacked reasonable suspicion to detain her for speeding. We affirm.

## I. *Factual Background*

On September 11, 2022, Officer Edgar Sanchez of the Cisco Police Department was parked in his patrol unit facing west on I-20, using his LIDAR to monitor the speed of vehicles traveling east. Officer Sanchez's LIDAR clocked a vehicle traveling ninety miles per hour on I-20 in a posted seventy-five mile per hour speed zone. He testified that he observed the shape, color, model, and direction of travel of the speeding vehicle as it passed by him. After observing this traffic violation, Officer Sanchez attempted to initiate a traffic stop but was unable to immediately do so because of construction on I-20 that had reduced eastbound traffic to a single lane. A truck and two smaller vehicles were in front of Officer Sanchez's patrol unit, which temporarily impeded his view of the speeding vehicle.

During the suppression hearing, Appellant introduced a video recording excerpt captured by the dashcam in Officer Sanchez's patrol unit. The dashcam automatically began recording when Officer Sanchez activated his patrol unit's

emergency lights, which occurred when Appellant's vehicle came into sight. Consequently, Officer Sanchez's dashcam did not record the traffic violation.

After the construction zone ended—approximately two miles from his initial location—Officer Sanchez saw a red Nissan Juke—a small SUV—stopped on the eastbound shoulder of I-20. This vehicle matched the make, model, color, and direction of travel of the vehicle that Officer Sanchez had observed speeding, and it was the only vehicle that matched the vehicle's description for an approximate two-mile stretch. Officer Sanchez testified that when his patrol unit initially drove onto I-20 to pursue the speeding vehicle, he did not see any other small SUVs of the same or similar color traveling eastbound on I-20. Officer Sanchez noted that the construction zone, an area that he had been patrolling, had caused all vehicles traveling east on I-20 to slow down that day, including the vehicle in question. After confirming that no vehicle had either exited I-20 or could be seen ahead of the vehicle that he had observed speeding, Officer Sanchez's patrol unit approached the red Nissan Juke and stopped behind it; his patrol unit's emergency lights were activated. Additionally, Officer Sanchez testified that he had conducted a traffic stop in the same area approximately thirty to forty minutes before Appellant was detained, and the red Nissan Juke was not parked there at the time.

When Officer Sanchez initially made contact with Appellant, he inquired if she was the driver of the red Nissan Juke, to which she responded, "Yes." Appellant advised Officer Sanchez that she had been parked at this location on I-20 for almost an hour because her vehicle had "broken down." Officer Sanchez asked Appellant to provide her name and a means of identification, specifically a driver's license. Appellant refused to produce a driver's license even though the law requires that a driver's license must be shown to a peace officer upon the officer's request. *See* TEX. TRANS. CODE ANN. § 521.025(a)(2) (West Supp. 2023) (a person required to

3

hold a license shall display the license upon the demand of a peace officer). Instead, and after she had also refused to identify herself, Appellant eventually provided a date of birth and stated that her name was "Rachel Fowler." After checking the accuracy of this information, Officer Sanchez found that the date of birth that Appellant provided matched Appellant's true name (Racheal Michelle Swanger), and with this name Officer Sanchez was able to verify that Appellant's driver's license had been revoked. Based on the circumstances that Officer Sanchez discovered while investigating the traffic violation, he arrested Appellant for failure to identify.

## II. *Standard of Review*

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). In reviewing a ruling on a motion to suppress, we apply a bifurcated standard of review. *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016); *Martinez*, 348 S.W.3d at 922–23. We give almost total deference to the trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Derichsweiler v. State*, 348 S.W.3d 906, 913 (Tex. Crim. App. 2011); *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We also defer to the trial court's findings as to questions of fact and mixed questions of law and fact that turn on the weight or credibility of the evidence. *Brodnex*, 485 S.W.3d at 436; *Wade v. State*, 422 S.W.3d 661, 666–67 (Tex. Crim. App. 2013); *Derichsweiler*, 348 S.W.3d at 913.

We review de novo the trial court's determination of pure questions of law, the application of the law to established facts, and the legal significance of those facts. *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018); *Wade*, 422

S.W.3d at 667; *Derichsweiler*, 348 S.W.3d at 913; *Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004) (citing *United States v. Sharpe*, 470 U.S. 675, 682 (1985)). We also review de novo mixed questions of law and fact that are not dependent upon credibility determinations. *Brodnex*, 485 S.W.3d at 436; *Derichsweiler*, 348 S.W.3d at 913 (citing *Amador*, 221 S.W.3d at 673).

If the record is silent as to the reasons for the trial court's ruling, as in the case before us, we review the evidence in the light most favorable to the trial court's ruling, infer the necessary fact findings that support the trial court's ruling if the evidence supports those findings, and assume that the trial court made implicit findings to support its ruling. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007); *Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex. Crim. App. 2000). When considering a motion to suppress, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). As such, the trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *Johnson v. State*, 803 S.W.2d 272, 287 (Tex. Crim. App. 1990). Therefore, we will sustain the trial court's ruling on a motion to suppress, regardless of whether the trial court granted or denied the motion, if it is supported by the record and if it is correct under any applicable theory of law. *Lerma*, 543 S.W.3d at 190; *Ross*, 32 S.W.3d at 855–56.

### III. *Analysis*

The Fourth Amendment to the United States Constitution guarantees protection against unreasonable searches and seizures. U.S. CONST. amend. IV; *Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010). These constitutional protections extend to investigatory stops of persons or vehicles that fall short of a

traditional arrest. *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36 (Tex. Crim. App. 2017) (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). A warrantless traffic stop by law enforcement personnel to address traffic violations constitutes a seizure within the meaning of the Fourth Amendment and is tantamount to a temporary detention; therefore, the traffic stop must be justified and supported by reasonable suspicion. *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984); *see Derichsweiler*, 348 S.W.3d at 914 (citing *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005)).

Reasonable suspicion for a detention exists if a law enforcement officer has specific, articulable facts, in light of his experience and knowledge, combined with rational inferences from those facts, that would lead the officer to reasonably conclude that the person detained has engaged in, is presently engaging in, or soon will engage in criminal activity. *Derichsweiler*, 348 S.W.3d at 914 (citing *Sokolow*, 490 U.S. at 7); *see Terry v. Ohio*, 392 U.S. 1, 21–22 (1968); *Crain v. State*, 315 S.W.3d 43, 52–53 (Tex. Crim. App. 2010). This is an objective standard that disregards the actual subjective intent of the detaining officer and focuses, instead, on whether there was an objectively justifiable basis for the detention. *Terry*, 392 U.S. at 21–22; *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011); *Derichsweiler*, 348 S.W.3d at 914.

When we evaluate whether reasonable suspicion exists, we consider the totality of the circumstances from an objective standpoint and whether the totality of the objective information available to the detaining officer indicates that the officer had a particularized and objective basis to suspect wrongdoing. *Ramirez-Tamayo*, 537 S.W.3d at 36; *Derichsweiler*, 348 S.W.3d at 914–916 (citing *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)); *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). This consideration includes "both the content of

6

information possessed by police and its degree of reliability." *Alabama v. White*, 496 U.S. 325, 330 (1990).

We may not use a "divide and conquer" approach, in which we disregard some individual circumstances as not being suspicious; instead, we must consider the cumulative force of all the circumstances. *Furr v. State*, 499 S.W.3d 872, 880 n.8 (Tex. Crim. App. 2016) (citing *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015)). As such, whether the facts known to the officer rise to the level of reasonable suspicion is a mixed question of law and fact that we review de novo. *State v. Mendoza*, 365 S.W.3d 666, 669–70 (Tex. Crim. App. 2012).

## A. *Reasonable Suspicion*

In her sole issue on appeal, Appellant complains that her *detention* was unlawful because there is insufficient evidence for Officer Sanchez to reasonably suspect that Appellant had engaged in criminal activity. Specifically, she asserts that the facts do not clearly establish that she was the individual who committed the speeding offense because (1) there is no recording or footage of the speeding vehicle, (2) Officer Sanchez did not observe her driving onto and stopping her vehicle on the eastbound shoulder of I-20, and (3) Officer Sanchez did not articulate sufficient facts that identified the red 2013 Nissan Juke as the speeding vehicle.

Despite Appellant's assertions, the legality of Appellant's detention does not rely on proof that an offense was actually committed; it is sufficient to show that the law enforcement officer reasonably believed that the person had engaged in criminal activity. *Martinez*, 348 S.W.3d at 923; *State v. Torrez*, 490 S.W.3d 279, 283-84 (Tex. App.—Fort Worth 2016, pet. ref'd); *Fernandez v. State*, 306 S.W.3d 354, 357 (Tex. App.—Fort Worth 2010, no pet.). Therefore, the State was not obligated to prove beyond a reasonable doubt that Appellant was speeding, as Appellant suggests; rather, the State was only required to show that Officer Sanchez had

reasonable suspicion to conclude that Appellant had committed a traffic violation. *See Powell v. State*, 5 S.W.3d 369, 376 (Tex. App.—Texarkana 1999, pet. ref'd). Further, a traffic stop that meets the test for reasonable suspicion is nonetheless lawful even if the facts supporting the stop are ultimately shown to be inaccurate or false. *Icke v. State*, 36 S.W.3d 913, 916 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd). As such, whether a law enforcement officer has reasonable suspicion is determined from the facts and circumstances known to the officer at the time of the detention, not on what the officer could have or should have known. *See State v. Duran*, 396 S.W.3d 563, 572 (Tex. Crim. App. 2013); *see also Brodnex*, 485 S.W.3d at 436.

A person commits a traffic offense if she operates a motor vehicle at a speed that (1) is greater than the posted speed limit or (2) is unreasonable under the circumstances. TRANSP. § 545.351(a), (b) (West 2022). In this regard, "[a] speed in excess of the limits established by Subsection (b) or under another provision of this subchapter is prima facie evidence that the speed is not reasonable and prudent and that the speed is unlawful." TRANSP. § 545.352(a). In this case, Officer Sanchez testified that he used his LIDAR to record a vehicle traveling fifteen miles per hour over the posted speed limit. An officer's observation of a traffic violation—here, a vehicle's excessive speed, with or without the use of a radar device—can satisfy the basis for reasonable suspicion to conduct a traffic stop. *Yoda v. State*, 630 S.W.3d 470, 479 (Tex. App.—Eastland 2021, pet. ref'd); *Maysonet v. State*, 91 S.W.3d 365, 372 (Tex. App.—Texarkana 2002, pet. ref'd); *Icke*, 36 S.W.3d at 916.

Officer Sanchez provided sufficient, specific facts that supported his reasonable belief that Appellant was the person who committed the traffic violation that he observed. Officer Sanchez observed identifying details of the speeding vehicle when it passed him and noticed that these details matched the make and

8

unique model, color, and direction of travel of the red Nissan Juke, which was the only vehicle that matched this description for a considerable distance. Officer Sanchez also testified that he had conducted a traffic stop in the same area where Appellant was detained approximately thirty to forty minutes prior, and that the red Nissan Juke, to which Appellant acknowledged she was driving that day, was not there at that time. He also articulated that construction on I-20 likely hindered the speeding vehicle, and that he did not see a vehicle traveling in front of Appellant's vehicle for over a mile. Further, Officer Sanchez emphasized that he did not see any other small SUVs traveling eastbound when he began his pursuit, and no eastbound vehicle exited I-20 before his patrol unit stopped behind the red Nissan Juke.

Based on the totality of the circumstances, Officer Sanchez articulated sufficient, specific facts that amounted to reasonable suspicion. *See Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015). As we have said, a police officer's reasonable suspicion to believe that a traffic violation has occurred justifies stopping a vehicle to investigate the circumstances of the offense. *Lerma*, 543 S.W.3d at 190. Here, Appellant could have been stopped based on the suspicion of speeding alone. *See* TRANSP. § 545.352. As such, because Officer Sanchez had an objectively justifiable basis to detain Appellant and investigate the circumstances of the traffic violation, the traffic stop did not violate Appellant's constitutional rights. *See Derichsweiler*, 348 S.W.3d at 914; *see also Orsag v. State*, 312 S.W.3d 105, 112–13 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (holding that the arresting officer had reasonable suspicion to stop the defendant for speeding when the vehicle's make, type, and color combined with its location and direction of travel were consistent with the report from a fellow officer and there were no other vehicles of the same make and color in the area). The trial court impliedly found Officer

9

Sanchez's testimony to be credible when it denied Appellant's motion, and we defer to that finding. *Derichsweiler*, 348 S.W.3d at 913.

We conclude that the trial court did not abuse its discretion when it denied Appellant's motion to suppress. Accordingly, we overrule Appellant's sole issue on appeal.

## IV. *This Court's Ruling*

We affirm the judgment of the trial court.

W. STACY TROTTER
JUSTICE

August 15, 2024

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.